# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6326 | **DATE** | 12/2/2004 |
| **CASE TITLE** | Heller Fin vs. Gordon | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 01/06/05 at 9:00 a.m. For the reasons stated in the attached memorandum opinion, we deny the Gordons' motion to dismiss for lack of subject matter jurisdiction and deny the motion to dismiss in favor of a duplicative parallel action. We also grant Heller's motion to dismiss the Defendants' counterclaims, and we grant Heller's motion to strike the Defendants' jury demand. We also grant Pace's motion to intervene. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 03 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. Memorandum Opinion distributed in open Court. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HELLER FINANCIAL LEASING, )
INC., a Delaware corporation, )
)
Plaintiff, )
)
v. ) No. 03 C 6326
)
ARTHUR E. GORDON, et al., )
)
Defendants. )

**DOCKETED**
DEC 3 2004

MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Arthur E. Gordon's and Rose A. Gordon's (collectively referred to as "the Gordons") motion to dismiss for lack of subject matter jurisdiction and motion to dismiss in favor of a parallel action. This matter is also before the court on Plaintiff Heller Financial Leasing, Inc.'s ("Heller") motion to dismiss the Defendants' counterclaims. This matter is also before the court on Heller's motion to strike Defendants' jury demand and on third party Pace LLC's (Pace") motion to intervene in the present action. For reasons stated below, we deny the Gordons' motions to dismiss. We also grant Heller's motion to dismiss the Defendants' counterclaims, we grant Heller's motion to strike the Defendants' jury demand, and we grant Pace's motion to intervene.

BACKGROUND

In August of 2000, Pace entered into an $18,000,000 promissory note ("Promissory Note") and Aircraft Chattel Mortgage Security Agreement with Heller.

1

At the same time, as inducement to Heller to make the loans and to extend credit to Pace, each of the Defendants entered into guaranty agreements ("Guarantee Agreements") with Heller. In the Guaranty Agreements, Defendants agreed to pay Heller "on demand . . . the due and punctual payments and performance of all indebtedness of Pace to Heller." (Guaranty Par. 1). Pace and Defendants failed to make the payments required under the agreements. In July of 2002, Pace, Defendants, and Heller entered into a Voluntary Surrender and Transfer Agreement whereby Pace agreed to voluntarily convey title to the Aircraft to Heller. Heller brought the present action against the Defendants seeking to recover the difference between the value of the Aircraft and the $18 million due and owing to Heller pursuant to the Guarantee Agreements. Defendants' obligation for the deficiency and the amount of the deficiency are the sole issues presented by Heller's complaint. Defendants have made a demand for a jury trial, and Heller has made a motion to strike this demand. Pace has also made a motion to intervene in the current action.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir. 1993)). For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence

has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). However the burden of proof "on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 444-45 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

I. Motion to Dismiss for Lack of Jurisdiction

The Gordons contend that this action should be dismissed because Heller has not provided sufficient evidence that this court has subject matter jurisdiction. Heller asserts in its complaint that this court has diversity subject matter jurisdiction. (Comp. Par. 6). The party seeking to invoke the court's jurisdiction bears the burden of showing that subject matter jurisdiction exists. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995)(stating that "[t]he party invoking federal jurisdiction bears the burden of establishing the elements of jurisdiction."). Diversity jurisdiction exists if "the matter in controversy exceeds the sum or value of $75,000" and the action is "between. . . citizens of different States. . . ." 28 U.S.C. § 1332(a). For the purposes of diversity of citizenship "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1). In the Seventh Circuit a corporation's principal place of business is deemed the "place where the corporation has its nerve center." *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993).

The Gordons argue that they dealt with an entity entitled Commercial Equipment Finance Group ("CEFG") whose main offices are located in California. The Gordons theorize that CEFG is the same entity as Heller and that Heller's principal place of business is thus in California. If Heller's principal place of business was in fact in California, since the Gordons are citizens of California, there would not be complete diversity which is required for diversity jurisdiction. The Gordons speculate that Heller is located in California, but is attempting to conceal that fact by providing documentation showing that its parent company's corporate

4

headquarters are located in Illinois. (Ans. 3). The Gordons contend that Heller purposefully creates confusion between the names "Heller Financial Leasing" and "Heller Financial Inc., Leasing." (Ans. 3). However, the Gordons provide no basis for such a conclusion or any explanation regarding how the Gordons came up with the two names mentioned by the Gordons.

In fact it is the Gordons themselves that vaguely refer to entities throughout their briefs and are confused regarding the proper titles of entities. For example, after the Gordons make reference in their answer to "Heller Financial Leasing" and "Heller Financial Inc., Leasing," the Gordons make reference to an entity termed "Financial." (Ans. 2). However, both of the above names contain the word "Financial." Another example is the Gordons' reference in its answer to "Heller Financial" which again is included in both of the above mentioned names referred to by Heller. (Ans. 3).

Heller filed a supplemental brief with the court to which it attached a declaration that is signed by Ron Lis ("Lis"), a Vice President for Heller Financial Leasing, Inc., which is the named plaintiff in the instant action. In the declaration Lis verifies that the corporate headquarters for Heller, the named plaintiff in this action, are located in Chicago, Illinois. Lis also states that CEFG which the Gordons contend they dealt with in California, is not a separate corporation from Heller. Lis states that CEFG is merely a division of Heller and has always been a division of Heller. The Gordons have not provided any evidence to refute the assertions made by Lis. Instead, the Gordons claim that they need further documentation and irrefutable proof that Lis is not lying in his declaration. Heller has provided a signed declaration indicating that this court has subject matter jurisdiction and the Gordons have offered absolutely no evidence that calls into doubt the sworn statement by Lis.

5

Therefore, we deny the motion to dismiss for lack of subject matter jurisdiction.

II. Motion to Dismiss in Favor of Duplicative Parallel Action

The Gordons seek to dismiss this action based on the fact that a similar action involving the same parties is pending in a California federal bankruptcy court. A district court may dismiss a suit "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993)(quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram*, 572 F.Supp. 1210, 1213 (N.D. Ill.1983)). In determining whether another action is duplicative a district court has a "a great deal of latitude and discretion. . . ." *Id.* (quoting *Ridge Gold*, 572 F.Supp. at 1210). An action is duplicative of the present action if the "claims, parties, and available relief do not significantly differ between the two actions." *Id.* (quoting *Ridge Gold*, 572 F.Supp. at 1213). When a district court determines that another parallel proceeding should be given "priority" the action before the district court "should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests." *Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co*, 203 F.3d 442, 445 (7th Cir. 2000).

Heller brought the instant action against Defendants alleging a breach of the Guaranty Agreement. Defendants in this action brought a counterclaim against Heller in this action. During the pendency of the instant action Defendant Eiseley Bennett and Defendant Jeffrey Bennett (collectively referred to as "the Bennetts") filed for bankruptcy in the Southern District of California. All claims in the instant action against the Bennetts are currently stayed due to the bankruptcy proceedings.

In the bankruptcy proceedings Defendants filed an Adversary Proceeding against Heller alleging the same claims that they have included in their counterclaim in the instant action. As we will explain in detail below, we are granting Heller's motion to dismiss the counterclaim in the instant action. Thus, the same claims are no longer at issue in the two actions. The precise issues and claims in the bankruptcy proceeding are not the same as those in the instant action. We do not find that the bankruptcy proceedings involve duplicative issues, and for the above stated reasons and other reasons, we do not find that the interest of efficient and effective judicial administration would be best served by dismissing the instant action. The proper forum to address the issues in the instant action is in this court which was chosen by Heller. Therefore, we deny the Gordons' motion to dismiss this action in favor of a duplicative parallel action.

### III. Motion to Dismiss Defendants' Counterclaim

Heller seeks to dismiss Defendants' counterclaim. In November of 2000, Pace leased the aircraft in question to KFC National Management Company ("KFC"). Once Heller learned of this lease agreement, Heller notified KFC that the Aircraft Mortgage between Heller and Pace prohibited the lease of the Aircraft to third parties. KFC terminated its aircraft lease with Pace, which was subsequently followed by Pace's default on the Promissory Note. Defendants have set forth two counterclaims based on the alleged conduct by Heller, alleging tortious interference with contractual relations claims and intentional interference with prospective economic advantage claims.

When a case is before a federal court based on diversity jurisdiction the court "has the obligation to apply the law of the state as it believes the highest court of the

state would apply it if presented with the issue." *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2000). Under Illinois law, the general rules of contract construction apply to guaranty agreements. *McLean County Bank v. Brokaw*, 519 N.E.2d 453, 456 (Ill. 1998). *See also Fimsa, Inc. v. Unicorp Financial Corp.*, 759 F. Supp. 1297, 130 (N.D. Ill. 1991)(stating that "[u]nder Illinois law . . . Guaranties are contracts legally enforceable in accordance with their express provisions.). Under Illinois law, guaranty agreements should be consistently enforced when the language is clear and unambiguous, including provisions under which the guarantor waives "each and every defense." *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 577 (7th Cir. 1995). Such waiver provisions under which the guarantor waives any available defenses are enforceable under Illinois law, regardless of their severity. *United Air Lines v. ALG, Inc.*, 916 F.Supp. 793, 795 (N.D. Ill. 1991);*See also Citicorp Savings of Illinois v. Ascher*, 554 N.E.2d 409, 411 (Ill. App. Ct. 1990)(stating that "[w]here the language is not ambiguous, [the guaranty] must be construed according to its terms."); *Bank of Benton v. LaBuwi*, 551 N.E.2d 749, 753-54 (Ill. App. Ct. 1990)(stating that "[a] guaranty contract which is unequivocal in its terms must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports."). In the instant action the Guaranty Agreements entered into by the Defendants and Heller in the present case state the following:

> Guarantor's obligations hereunder shall be unconditional (and shall not be subject to any defense, setoff, counterclaim, or recoupment *whatsoever*)... irrespective of the genuineness, validity, regularity, or enforceability of the indebtedness or any conduct of Debtor [Pace] and/or Lender [Heller] which might constitute a legal or equitable discharge or a surety, guarantor or guaranty.

8

(Guaranty Par 1)(emphasis added). The language in the Guaranty Agreements is clear and unambiguous. The Guaranty Agreements were part of the inducement to get Heller to extend credit to Pace. These agreements function to allocate the risks of default between the parties. *See United Air Lines*, 916 F. Supp. at 795 (finding that such provisions are an "attempt by market participants to allocate risks and opportunities."). Defendants' promise to repay the loan in the event of Pace's default was not the only consideration in these agreements. The waiver of all and any "defense, setoff, counterclaim, or recoupment whatsoever" also served as consideration and inducement for Heller to enter into the agreements and extend credit to Pace. *See Chrysler Credit*, 63 F.3d at 578 (noting that guaranty was made to induce completion of loan). When the language in the agreements is clear and unambiguous, it is not this court's place to step in to try and read an alternate intent into the language of the guaranty agreement. *Fimsa, Inc.*, 759 F. Supp. at 1301.

The Defendants claim that the waiver provision of the Guaranty Agreements only applies to claims that existed at the time the contract was entered into and not to claims that might arise at a later date. More specifically, they suggest that the court in *Fimsa* only found a guaranty waiver provision to apply to all present and later claims because the waiver contained language that indicated that the waiver applied to claims that "the undersigned may now have *or hereafter may have.*" 759 F.Supp. at 1301. As previously stated, under Illinois law, the general rules of contract construction apply to guaranty agreements. *McLean County*, 519 n.E.2d 456. Under Illinois law, the words of a contract should be interpreted in accordance with their plain and ordinary meaning where they are clear and unambiguous. *Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co*, 494 N.E.2d 634, 642 (Ill. App. Ct. 1986). *See also U. S. Fire Ins. Co. v. Schnackenberg,* 429 N.E.2d 1203, 1205 ((Ill.

1981)(stating that "if the provisions . . . are clear and unambiguous there is no need for construction and the provisions will be applied as written.").

In the Guaranty Agreements Defendants expressly waive all defenses and counterclaims "whatsoever" which includes future claims. (Guaranty Par 1). Courts have not required temporal language such as "in the future" or "hereafter" in order for a waiver provision to apply to future claims. *See e.g., Home Federal Bank for Savings v. Daly*, 1990 WL 251775 at *3 (N.D. Ill 1990);*Lincoln Park Federal Savings & Loan Association v. Carrane*, 548 N.E.2d 636, 639 (Ill. App. Ct. 1989); *United Air Lines*, 916 F. Supp. at 794. Therefore, the language of the Guaranty Agreement is applicable to Guarantor's present counterclaims and establishes that Defendants have waived their right to all defenses and counterclaims.

Finally, Defendants assert that the waiver provision should not be applied to their counterclaims asserting tortious conduct because such a ruling would run contrary to public policy. The counterclaims that Defendants assert arise from Heller's act of informing KFC that, under the terms of Heller and Pace's Aircraft Mortgage Agreement, Pace did not have the authority to lease the aircraft. As a result of Heller informing KFC of the terms of Heller and Pace's agreement, KFC terminated its pending aircraft lease agreement with Pace. Defendants claim that the present case is analogous to a situation in which, after loaning money to a debtor for the purpose of renting an apartment, the bank burned down the apartment knowing that the debtor was to use rental income to repay the debt. However, this comparison is misplaced because Defendants have not alleged that Heller has done anything criminal such as burning down a building. Rather, all Heller did was inform the third party that, under the explicit terms of Pace's agreement with Heller, Pace did not have the authority to lease the aircraft to a third party. This was not a

criminal act. Under the actual terms of the written Aircraft Mortgage Agreement, this was not even a false declaration. (Security Agreement §5.2).

Furthermore, the Supreme Court of Illinois has stated that it is in the interest of public policy to hold parties to contracts that the parties freely and voluntarily entered into with each other. In the present case, Defendants freely and voluntarily entered into an agreement that clearly and unambiguously waived any "defense, setoff, counterclaim, or recoupment whatsoever" that Defendants might have. (Guaranty Par 1). Not only did Defendants agree to this explicit language by signing the original Guaranty Agreements, under the Voluntary Surrender and Transfer Agreement they subsequently agreed that "[Defendants] shall not dispute the validity or enforceability of the [Guaranty Agreements]." (Surrender Agreement Par 5(d)). By signing the Voluntary Surrender and Transfer Agreement and the original Guaranty Agreements, Defendants effectively twice agreed to waive any "defense, setoff, counterclaim, or recoupment whatsoever." When sophisticated business actors, under the representation of counsel, twice agree to waive all defenses and counterclaims, it is not against public policy to hold those parties to their word, nor is it the court's place to rewrite the terms that the parties have clearly agreed to on their own. Therefore, we grant the motion to dismiss Guarantor's counterclaims.

## IV. Heller's Motion to Strike Jury Demand.

Heller has moved to strike Defendants' jury demand as it relates to both Heller's breach of guaranty claim and Defendants' counterclaims. Although the Seventh Amendment guarantees the right to a jury trial in civil cases, the right can be waived. *Stewart v. RCA Corp.*, 790 F.2d 624, 630 (7th Cir. 1986). There is a presumption against enforcing such waivers and thus a waiver of the right to a jury

11

trial must be "made knowingly and voluntarily." *Whirlpool FIN. Corp. v. Sevaux*, 866 F.Supp. 1102, 1105 (N.D. Ill. 1994);*Sutter Insurance Co. v. Applied Systems*, 2004 WL 161508, at *7 (N.D. Ill. 2004); *In re Reggie Packing Co., Inc.*, 671 F. Supp. 571, 573 (N.D. Ill. 1987). A court should "indulge every reasonable presumption" against a jury waiver because the right to a jury trial is fundamental. *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393 (1937).

Heller argues, in support of its motion to strike Defendants' jury demand, that Defendants have contractually waived this right. The relevant language of the Guaranty Agreements state: "Guarantor hereby waives... any rights to a trial by jury of any claim or cause of action or in any litigation or any court with respect to or arising out of this Guaranty." (Guaranty Agreement 5). The Defendants do not contest the fact that the jury waiver in the Guaranty Agreements is a valid waiver. Instead, Defendants argue that the language of the waiver indicates that it only applies to claims that "arise out of" the Guaranty Agreements and Defendants argue that the counterclaims do not arise out of the Guaranty Agreements. However, as explained above, Defendants' counterclaims are being dismissed which renders the jury trial issue in regards to the counterclaims a moot issue. In Defendants' answer brief to the motion to strike, they only address the propriety of a jury trial in the context of Guarantor's counterclaims. Defendants also argue that enforcing the jury waiver provision in the Guaranty Agreements would be against public policy when applied to Defendants' counterclaims because those counterclaims are tort claims. However, even if this argument is true, this reasoning does not apply to Heller's breach of guaranty claim because Heller's claim is only a contract claim and not a tort claim. Defendants have not presented any evidence that would indicate that the waiver provision was not signed knowingly and voluntarily. Therefore, we grant

Heller's motion to strike Guarantor's jury demand.

## V. Pace's Motion to Intervene

Pace seeks to intervene in the instant action pursuant to Federal Rule of Civil Procedure 24.

### A. Intervention as of Right

Pursuant to Federal Rule of Civil Procedure 24(a) a prospective intervenor that seeks intervention in a timely manner is entitled to intervene: "(1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a). In the instant action there is no federal statute that confers an unconditional right upon Pace to intervene.

To proceed under 24(a)(2) a prospective intervenor must show that: "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest. *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). It is the burden of the prospective intervenor to prove "each of the four elements of intervention as of right," *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985), and if the prospective

13

intervenor fails to show that any of the above four factors are not in its favor, "[t]he failure to meet any one factor dictates denial of the petition." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

Pace argues that it has a direct interest at stake in the present action that would be impaired if it were not allowed to intervene. A prospective intervenor must establish that it has an interest in the instant action that is "direct, significant, and legally protectable." *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 101 F.3d 503, 506 (7th Cir. 1996). The Seventh Circuit has stated that the interest of the prospective intervenor must be "something more than a mere 'betting' interest. . ., but less than a property right. . .[and] [w]hether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Security Ins. Co. of Hartford*, 69 F.3d at 1380-81. Whether or not the proposed intervenor's interest would be impaired "depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co*, 683 F.2d 201, 204 (7th Cir. 1982).

Pace argues that the "determination of whether Heller performed its obligations . . . directly affects Pace because it implicates Pace's obligations under the Promissory Note, as well as the Guarantors [sic] obligations under the Guarantee Agreements." (Reply 2). We agree that determinations in the instant action may affect Pace's interests which are direct and significant. Not only will the amount of indemnification be at issue, findings concerning Heller's performance will inhibit Pace from arguing otherwise in a future action brought on its own behalf or in an action brought by Heller against Pace. Pace also correctly argues that it "has a

significant interest in the resolution of the value of the aircraft and related collateral at the time of surrender to Heller and any resulting deficiency because the determination effects [sic] how much Pace owes Heller, if anything under the Promissory Note." (Reply 2-3). Pace's has shown that it has a direct interest that will be impaired if it is not allowed to intervene.

Finally, Pace argues that its interests would not be adequately represented by Gordon. Heller cites *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982) for the proposition that "presumption of adequacy of representation arises when the proposed intervenors and a party to the suit have the same ultimate objective." (Inter. Ans. 4). However, Heller fails to correctly quote the Seventh Circuit and has omitted pertinent language that is contrary to its position. The quote in *Wade* actually reads as follows: "Even if we were to assume arguendo that applicants have a direct legally protectable interest, applicants have not overcome the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit *(especially if it is the state)* have the same ultimate objective. <u>Environmental Defense Fund v. Higginson</u>, 631 F.2d 738, 760 (D.C.Cir.1979); <u>United States Postal Service v. Brennan</u>, 579 F.2d 188, 191 (2d Cir. 1978)." *Id.* (emphasis added). The court in *Wade* cited *Environmental Defense Fund v. Higginson*, 631 F.2d 738, 760 (D.C.Cir.1979) and in *Environmental* four States sought to intervene in the action. *Id.* at 157. The court in *Wade* also cited *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) and in *Brennan* the proposed intervenors were arguing that the United States Attorney's Office would not adequately represent their interests. *Id.* at 76. However, unlike in *Environmental* and *Brennan*, in the instant action neither Pace nor Defendants are a public entity acting on behalf of its citizens and thus pursuing a common interest. We also note that the court in *Brennan*

quoted *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) for the proposition that "[a]n applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden "should be treated as minimal." 579 F.2d at 191.

Pace has shown that its interests will not be adequately represented by Defendants. Heller also argues that Defendant Jeffrey Bennet is the Managing Member of Pace and has a fiduciary duty to Pace. Such a connection in and of itself is not proof that his interest and Pace's interests are synonymous and there are potential differences in his choice of arguments and representation in the action and those for Pace. Therefore, we find that Pace's interests would not be adequately represented by Defendants and that Pace has a right to intervene.

### B. Permissive Intervention under Rule 24(b)(2)

Pace also argues that it should be allowed by the court in its discretion to intervene. Even if Pace did not have a right to intervene, we would find in our discretion that Pace may intervene. Civil Rule of Procedure 24(b)(2) provides the following:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P 24(b)(2). Clearly, Pace's involvement and connection to the main claim in this action warrants allowing an intervention by Pace. There are clearly common issues of fact and law that will apply to claims involving Defendants and Pace. The instant proceedings are still at the pleading stage and the intervention need not cause any undue delay. Nor has Heller shown that it will be prejudiced by the intervention. We find that the intervention would further the interests of judicial economy and the efficient operation of the judicial system. Therefore, we grant Pace's motion to intervene.

## CONCLUSION

Based on the foregoing analysis, we deny the Gordons' motion to dismiss for lack of subject matter jurisdiction and deny the motion to dismiss in favor of a duplicative parallel action. We also grant Heller's motion to dismiss the Defendants' counterclaims, and we grant Heller's motion to strike the Defendants' jury demand. We also grant Pace's motion to intervene.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 2, 2004