IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HELLER FINANCIAL LEASING, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 03 C 6326 ) ) |
| ARTHUR E. GORDON, an individual resident of California, ROSE A. GORDON, an individual resident of California, NAN R. EISLEY BENNETT, an individual resident of California, and JEFFREY P. BENNETT, an individual resident of California, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Heller Financial Leasing, Inc.'s ("Heller") motion for summary judgment on the issue of damages on the claims brought against Defendant Arthur E. Gordon and Defendant Rose A. Gordon (collectively referred to as "Gordons"). This matter is also before the court on the Gordons' motion for leave to file an amended Local Rule 56.1 response, the Gordons' motion to strike portions of Heller's 56.1 response, the Gordon's motion to strike certain declarations, and the Gordons' motion to bar. For the reasons stated below, we deny Heller's motion for summary judgment on the issue of damages. We grant the Gordons' motion to strike portions of Heller's Local Rule 56.1

response. We deny as moot the Gordons' motion for leave to file an amended Local Rule 56.1 response, the Gordon's motion to strike certain declarations, and the Gordons' motion to bar.

## BACKGROUND

In August 2000, Pace, LLC ("Pace") entered into a promissory note ("Promissory Note") and an Aircraft Chattel Mortgage Security Agreement regarding an aircraft ("Aircraft") with Heller, under which Heller loaned Pace $18,000,000. At the same time, as inducement to Heller to make the loans and extend credit to Pace, the Gordons each entered into a guarantee agreement ("Guarantees") with Heller. In the Guarantees, the Gordons agreed to pay Heller "on demand . . . the due and punctual payments and performance of all indebtedness of Pace to Heller." (Guarantee Par. 1). Pace defaulted on its obligation to repay Heller and the Gordons failed to honor their obligations to act as guarantors. In July 2002, Heller entered into a Voluntary Surrender and Transfer Agreement ("Surrender Agreement") with Defendants and Pace whereby Pace agreed to voluntarily convey title and possession of the Aircraft to Heller. Heller brought the instant action against the Defendants seeking to recover money owed to Heller pursuant to the Guarantees. On October 19, 2005, we granted Heller's motion for summary judgment on the claims brought against the Gordons and we dismissed the claims brought against Defendant Nan R. Eisley Bennett and Defendant Jeffrey P. Bennett. Heller now moves for summary judgment on the issue of damages in regard to the claims brought against the Gordons.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212

F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Heller seeks a total of $13,721,860.70 in damages for the claims that were brought against the Gordons. Heller seeks $6,250,000 for what Heller contends is the difference between the outstanding principal balance of $18,000,000 and the value of the Aircraft. Heller also seeks $5,902,655.28 in accrued interest through December 2005, $1,248,637.76 for repair and maintenance costs on the Aircraft, $125,000.00 for broker fees, and $195,567.66 for legal fees.

I. Motions Relating to Local Rule 56.1 Statements

The Gordons move to strike Heller's response to the Gordons' statement of material facts arguing that the response fails to comply with Local Rule 56.1. However, the Gordons have failed to show that the entire response or even a substantial portion of the response is not in compliance with Local Rule 56.1. In such an instance, rather than striking the entire Local 56.1 response, it is appropriate to focus on the paragraphs that are objected to by the movant. The Gordons object to various paragraphs of Heller's statement of facts on the grounds that the paragraphs contain legal arguments and legal conclusions. A statement of material facts, as its title implies, should provide the court with facts. *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). A statement of facts cannot be utilized by parties as a means to augment their briefs with additional legal arguments or legal conclusions. *See id.* (stating that "[t]he purpose of the 56.1 statement is to identify

4

for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument").

The Gordons specifically object to Heller's statement of material facts paragraph numbers 30, 31, 32, 33, 34, 36, 37, and 39. In paragraph 30, Heller asserts that it "has suffered . . . damages" in certain amounts. (SF Par. 30). However, whether Heller has suffered damages is a legal issue. In paragraph 31, Heller improperly makes reference to the "satisfied portion" of the Surrender Agreement and concludes the paragraph by asserting that the amounts mentioned are the amounts "for which the Gordons are liable." (SF Par. 31). Again, such statements are legal conclusions. In paragraph 32, Heller asserts the amount of interest that has accrued, how to calculate the interest rate, and the principal "owed by the Gordons." (SF Par. 32). Paragraph 32 is thus a legal conclusion as to what the Gordons "owed," and a legal argument concerning how the Promissory note should be interpreted and how the interest rate should be calculated. In paragraph 33, Heller makes references to the calculation of interest and to the "amount of indebtedness." (SF Par. 33). Such matters are legal conclusions. In paragraph 34, Heller makes legal arguments and conclusions concerning matters such as the indebtedness of the Gordons, the remaining balance at issue, and the calculation of interest. (SF Par. 34). In paragraph 36, Heller states, among other things, that it installed an "emergency locating transmitter" on the Aircraft "as required by federal law . . . ." (SF Par. 36). However, whether such a transmitter was necessary under federal law is an issue of law. In paragraph 37, Heller asserts that certain maintenance and repairs to the Aircraft were "mandated by federal law." (SF Par.

36). Such a contention is a legal conclusion. Paragraph 39 consists of Heller's assertion that the hourly fees charged by Heller's attorneys were reasonable. Such an assertion is a legal conclusion. Thus, all of the above mentioned paragraphs contain legal arguments and/or legal conclusions and, accordingly, fail to comply with Local Rule 56.1. Therefore, we grant the Gordons' motion to strike, and strike paragraphs 30, 31, 32, 33, 36, 37, and 39 of Heller's Local Rule 56.1 statement of material facts.

The Gordons have also moved to file an amended response to Heller's statement of material facts. However, as is explained below, based upon the Gordons' original response to Heller's statement of material facts, it is clear that Heller cannot prevail on its motion for summary judgment. Therefore, we deny as moot the Gordons' motion for leave to file an amended response to Heller's statement of material facts.

II. Difference Between Outstanding Balance and Value of Aircraft

Heller argues that it is entitled to an award of damages for the difference between the outstanding principal balance of $18,000,000 and the value of the Aircraft, which Heller contends is $11,750,000. This difference comes to $6,250,000. The Gordons argue that they should not be required to pay the entire difference between the outstanding indebtedness owed and the value of the Aircraft because Heller did not act in a commercially reasonable manner in caring for and disposing of the Aircraft. According to the Gordons, Heller did not act in a commercially reasonable manner because Heller used the Aircraft for business trips,

failed to aggressively market the Aircraft, refused an offer to purchase the Aircraft, and failed to sell the Aircraft in an expeditious manner.

Since the Guarantees, Promissory Note, and Surrender Agreement state that Illinois law is applicable, the transaction that is at issue in the instant action is a secured transaction that is governed by Illinois law. Both Heller and the Gordons agree that this is true. (SJ Mem. 3-4)(Ans. SJ 3). The disposition of collateral after a default by a secured creditor is government by 810 ILCS 5/9-610, which states, in part, that:

> After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing[, and]
> [e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

810 ILCS 5/9-610(a) and (b). The determination of whether a sale is commercially reasonable is a question that must be determined by the trier of fact. *Heritage Standard Bk. and Trust Co. v. Heritage Standard Bk. and Trust Co.*, 500 N.E.2d 60, 66 (Ill. App. Ct. 1986).

A. Business Trips

The Gordons argue that between the time Heller took possession of the Aircraft from Pace and when it was leased in 2005, Heller allowed its corporate parent company, GE Capital Corporation ("GECC"), to use the Aircraft for business trips and that the additional mileage on the Aircraft has impaired its value. Heller

does not dispute that when it possessed the Aircraft, Heller thought that it "had a right to use the Aircraft however it wanted." ( R SAF Par. 4). Heller admits that GECC thought that its ability to use the Aircraft "for GECC business purposes was a 'tremendous benefit'" and that GECC executives utilized the Aircraft to travel on business trips. ( R SAF Par. 5-10). Whether such use depreciated the value of the Aircraft is a matter to be decided by the trier of fact. The Gordons cannot fairly be held accountable for depreciation caused by the use of the Aircraft for GECC business trips.

Heller also contends that some of the use of the Aircraft occurred when it was taken to a trade show where Heller tried to sell the Aircraft. However, the evidence shows that GECC employees rode on the Aircraft, for example, on the trip to West Palm Beach in March 1994. (Fors. Dep. 136). Although Heller contends that such employees were going to the trade show to help sell the Aircraft, there is an absence of evidence showing that such GECC employees would not have attended the trade show if the Aircraft had not been marketed at the trade show. Whether the GECC employees just happened to ride on the Aircraft to the trade show in order to offer assistance to AVPRO, Inc. ("AVPRO"), the broker hired by Heller, or whether the trip was merely a pretext to transport GECC employees to the trade show is a matter that can only be determined by the trier of fact. Thus, there are also disputed facts regarding the extent of use of the Aircraft by GECC for business trips and the wear and tear on the Aircraft. In addition, the resulting amount of depreciation on the Aircraft is a matter of fact that can only be determined by the trier of fact.

B. Marketing

The Gordons argue that Heller failed to market the Aircraft aggressively. Heller states that it hired AVPRO to market the Aircraft, that in November 2003 AVPRO listed the sale price for the Aircraft as $13.5 million, ( R SAF Par. 26), and that in May 2, 2005, AVPRO was still attempting to sell the Aircraft for the same price. ( R SAF Par. 27-29). There is no indication that AVPRO heightened its marketing efforts when no bidders came forward. Heller claims that AVPRO marketed the Aircraft by listing the Aircraft in advertisements, listing services, and websites. Heller also claims that AVPRO circulated brochures concerning the sale of the Aircraft, took potential buyers on test flights, and took the Aircraft to a trade show to market the Aircraft.

Although Heller has pointed to evidence that AVPRO prepared brochures, Heller has not pointed to evidence that shows that AVPRO distributed brochures to potential customers or made other efforts to circulate the brochures. ( SF Par. 21). The Gordons also correctly point out that the evidence cited by Heller indicated that AVPRO contemplated the possibility of such test flights, but does not show that AVPRO actually took potential buyers on test flights. ( R SF Par. 22). Whether AVPRO engaged in sufficiently aggressive marketing tactics is a matter to be decided by the trier of fact. There are also additional issues raised by the evidence as to whether Heller should have either instructed AVPRO to step up its efforts or should have retained a new broker. Such matters may only be determined by the trier of fact.

### C. Refusal of Offer

Heller does not dispute the fact that in May 2003, Heller received an offer for the Aircraft from Dorel Industries ("Dorel") to purchase the Aircraft and that Heller declined the offer. (R SAF Par. 38-39). Heller indicates that Dorel's initial offer was for $8,000,000 in cash and a trade-in of another aircraft that Dorel estimated was worth $3,000,000. (R SAF Par. 38). Heller contends that the trade-in aircraft was not worth $3,000,000. However, there are legitimately disputed facts concerning whether the offer by Dorel, even discounting the value of the trade-in aircraft, should have been accepted by Heller.

### D. Excessive Delay

The Gordons argue that there was an excessive amount of time between when Heller took possession of the Aircraft and when Heller leased the Aircraft in 2005. The Gordons claim that after Heller took possession, it allowed the Aircraft to remain unsold and unleased for three years. Heller disputes the Gordons' use of the phrase "almost three years," but acknowledges that Heller took possession of the Aircraft on or about July 11, 2002, and entered into a lease transaction for the Aircraft on or about May 22, 2005. (R SAF Par. 13). Thus, Heller admits that at the very least, the Aircraft remained unsold and unleased for two years and ten months. As is explained above, there are various disputed facts concerning Heller's marketing of the Aircraft and refusal of an offer that draw into question whether the two years and ten months was a reasonable time for Heller to allow the Aircraft to remain unsold and unleased. Thus, based upon all of the above, we cannot find as a

matter of law that Heller acted in a commercially reasonable manner while it possessed the Aircraft. After Heller took possession of the Aircraft, Heller's treatment of the Aircraft and efforts to sell or lease the Aircraft while in its possession and the length of that possession are issues that must be addressed by the trier of fact.

II. Interest

Heller argues that it is entitled to damages for $5,902,655.28 in accrued interest through December 2005. As explained above, the amount of indebtedness owed for the difference between the outstanding indebtedness and the value of the Aircraft is an issue that can only be resolved by the trier of fact. Any interest calculations would be dependent on such a determination and thus it cannot be calculated at this juncture.

III. Repair and Maintenance Costs

Heller argues that it is entitled to damages for costs associated with the repair and maintenance of the Aircraft between the time that Heller took possession from Pace and when the Aircraft was leased in 2005, which totaled $1,248,637.76. Heller contends that the costs consisted of: 1) a required post-lease/prepurchase inspection of the Aircraft and necessary repairs, 2) a required 120-month inspection of the airframe of the Aircraft, 3) painting of the Aircraft, 4) installation of emergency locating transmitter, 5) regularly-scheduled 12-month inspections, and 6) necessary monthly care and upkeep to keep the Aircraft ready for test flights. The Gordons

acknowledge that some repair and maintenance costs may have been warranted and the Gordons do not challenge Heller's assertion that it paid out the amount for such services that Heller now asserts as damages. ( R SF Par. 36)(Ans. SJ 15). However, the Gordons contend that the amount of costs incurred by Heller were excessive.

As is explained above, there are genuinely disputed facts and determinations that can only be made by the trier of fact in regard to the time that the Aircraft remained unsold and unused in Heller's possession. If the trier of fact determined that such a period of time was unreasonable, then it may follow that the Gordons could not be required to pay for all the maintenance and repair costs sought for that time period. Also, Heller admits to allowing GECC to use the Aircraft for business trips and a determination must be made by the trier of fact whether any maintenance and repair costs should be attributed to the use of the Aircraft by GECC. Thus, the amount of damages owed for repair and maintenance costs involves genuinely disputed facts and determinations that must be made by the trier of fact.

IV. Broker Fees

Heller argues that it is entitled to damages for $125,000 in broker fees. Heller claims that after it took the Aircraft back into inventory, Heller retained AVPRO as a broker to market the aircraft. AVPRO allegedly marketed the Aircraft by listing the Aircraft in advertisements, listing services, and websites, and circulated brochures concerning the sale of the Aircraft. AVPRO also allegedly took potential buyers on test flights and took the Aircraft to a trade show to market the Aircraft. Heller claims that it paid AVPRO a $125,000 broker fee for the services it rendered.

The Gordons admit that Heller paid the $125,000 to AVPRO for a broker fee, but complain that the documentation is not authenticated. ( R SF Par. 20). The Gordons also admit that AVPRO engaged in the above marketing activities of the Aircraft, except that the Gordons point out that the evidence does not show that AVPRO actually circulated brochures regarding the sale of the Aircraft. ( R SF Par. 21). As is explained above, there are determinations that can only be made by the trier of fact concerning whether AVPRO acted with sufficient aggressiveness in marketing the Aircraft. Thus, since AVPRO's performance is a contested issue, a corresponding issue that must be considered by the trier of fact is whether Heller should have paid AVPRO the full amount of requested fees or whether it should have terminated its relationship with AVPRO and hired another broker. Thus, a determination on whether Heller can recover for all of the fees paid to AVPRO is premature at this juncture.

V. Legal Fees

Heller argues that it is entitled to damages for $195,567.66 in legal fees. However, as is explained above, the reasonableness of the duration of Heller's possession of the Aircraft and certain business decisions in the interim, such as the refusal of the offer from Dorel, are determinations that must be addressed by the trier of fact and are determinations that would impact the exact amount of legal fees that should have reasonably been incurred by Heller. Whether Heller could have mitigated the amount of attorney's fees now requested as damages is an issue that cannot be determined at this juncture.

Based upon all of the above, we find that there are genuinely disputed material facts and determinations that can only be made by the trier of fact in this action. Therefore, we deny Heller's motion for summary judgment in its entirety.

VI. Motion to Bar and Motion to Strike Declarations

The Gordons move to strike the declarations filed by Heller that correspond to Heller's statement of material facts, due to the untimely nature of the filing of the declarations. However, the declarations were filed shortly after the statement of additional material facts and we will, in our discretion, consider the declarations. Also, even if the declarations were stricken, such a ruling would have no effect on our ultimate ruling on Heller's motion for summary judgment. Therefore, we deny the Gordon's motion to strike.

The Gordons also move to bar certain evidence relating to damages incurred by Heller that the Gordons contend was disclosed in an untimely fashion. However, the motion to bar is moot because the evidence contested by the Gordons is not sufficient to enable Heller to prevail on its motion for summary judgment. In order to ensure that the parties are given every opportunity to complete their discovery and to ensure that the parties are fully prepared for the upcoming trial on the damages issue, the parties are given until May 2, 2005 to complete any additional discovery as to damages. Accordingly, we deny the Gordons' motion to bar evidence of damages.

## CONCLUSION

Based on the foregoing analysis, we deny Heller's motion for summary judgment on the issue of damages for the claims brought against the Gordons. We also grant the Gordons' motion to strike portions of Heller's Local Rule 56.1 response. We deny as moot the Gordon's motion to strike certain declarations, the Gordons' motion for leave to file an amended Local Rule 56.1 response, and the Gordons' motion to bar.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 28, 2006