IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HELLER FINANCIAL LEASING, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 03 C 6326 |
| ARTHUR E. GORDON, an individual resident of California, ROSE A. GORDON, an individual resident of California, NAN R. EISLEY BENNETT, an individual resident of California, and JEFFREY P. BENNETT, an individual resident of California, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' motions in limine. For the reasons stated below, we deny all of the motions in limine.

## BACKGROUND

In August 2000, Pace, LLC ("Pace") entered into a promissory note ("Promissory Note") and an Aircraft Chattel Mortgage Security Agreement

1

regarding an aircraft ("Aircraft") with Plaintiff Heller Financial Leasing, Inc. ("Heller"), under which Heller loaned Pace $18,000,000. At the same time, as inducement to Heller to make the loans and extend credit to Pace, Defendants Arthur E. Gordon and Rose A. Gordon (collectively referred to as "Gordons") each entered into a guarantee agreement ("Guarantees") with Heller. In the Guarantees, the Gordons agreed to pay Heller "on demand . . . the due and punctual payments and performance of all indebtedness of Pace to Heller." (Guarantee Par. 1). Pace defaulted on its obligation to repay Heller and the Gordons failed to honor their obligations to act as guarantors. In July 2002, Heller entered into a Voluntary Surrender and Transfer Agreement ("Surrender Agreement") with Defendants and Pace, whereby Pace agreed to voluntarily convey title and possession of the Aircraft and certain equipment to Heller. Heller hired AVPRO, Inc. ("AVPRO") as a broker to sell the Aircraft and Heller ultimately sold the Aircraft. Heller then brought the instant action against Defendants seeking to recover the remaining money owed to Heller pursuant to the Guarantees. On October 19, 2005, we granted Heller's motion for summary judgment on the claims brought against the Gordons and we dismissed the claims brought against Defendant Nan R. Eisley Bennett and Defendant Jeffrey P. Bennett. On March 28, 2006, we denied Heller's motion for summary judgment on the issue of damages in regard to the claims brought against

the Gordons. The parties have now filed motions in limine.

# DISCUSSION

I. Heller's Motions in Limine

Heller requests that the court limit the scope of the testimony of the Gordons' expert witness. Heller also moves separately to bar the expert from testifying as to the estimated value of the Aircraft on July 31, 2002.

    A. Motion to Limit Scope of Expert Testimony

Heller contends that the Gordons intend to present Robert Waddell ("Waddell") as an expert witness at trial. Heller requests that the court bar Waddell from testifying about: 1) aircraft auctions, 2) how the use of the Aircraft for business trips by Heller's parent company, GE Capital Corporation ("GECC"), inhibited the sale of the Aircraft and diminished the value of the Aircraft, 3) how Heller repeatedly turned down offers for the purchase of the Aircraft, 4) the efforts of AVPRO to sell the Aircraft, 5) the maintenance charges for the Aircraft, and 6) the reasonableness of the ultimate sale of the Aircraft.

The admissibility of expert testimony is controlled by Federal Rule of Evidence 702 ("Rule 702"), which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In determining whether to permit an expert to give testimony "including non-scientific expert testimony," a court must act as a "gatekeeper" and "'ensure the reliability and relevancy of expert testimony'" before admitting the testimony. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607-08 (7th Cir. 2006)(quoting in part *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

### 1. Aircraft Auctions

Heller contends that Waddell does not possess sufficient knowledge concerning aircraft auctions to provide testimony regarding such auctions. Heller points out that Waddell admitted during his deposition that he has not attended an aircraft auction since the late 1980s. (W Dep. 265). Waddell also admitted that he has never seen a "large cabin, long-range, state-of-the-art aircraft," which is the type of aircraft at issue in this action, being sold at an auction. (W Dep. 265-66). Finally, Waddell admitted that he could only speculate as to how much money the Aircraft

4

would have sold for at an auction. (W Dep. 266). However, the evidence also shows that Waddell has extensive experience in dealing with aircraft appraisals and that he has attended between six and twelve aircraft auctions. (W Dep. 265)(Mot. Ex A). Heller has not shown that Waddell's testimony would be speculative in regard to all testimony concerning aircraft auctions. Heller will be able to point out on cross examination that Waddell has not recently attended an auction and that Waddell does not know exactly what price the aircraft would have sold for at an auction. Heller can also ask Waddell if he has seen aircraft comparable to the Aircraft sold at an auction. Also, if Waddell testifies that Heller could have sold the Aircraft at an auction, Heller may seek the basis of such a conclusion. Heller may believe that Waddell's expertise is not adequate, but Heller has not shown that his expert testimony would necessarily be unreliable or that it would not fit within the scope of Rule 702. Therefore, we deny Heller's request to bar Waddell from testifying about aircraft auctions.

### 2. Use of Aircraft on Business Trips

The Gordons contend that while Heller was attempting to sell the Aircraft, GECC used the Aircraft for business trips. Heller requests that the court bar Waddell from testifying that the business trips inhibited the sale of the Aircraft or

depreciated the value of the Aircraft. Heller points to Waddell's deposition testimony in which Waddell made certain statements about his lack of knowledge about the business trips, but such points may be made on cross examination at trial. Heller has not shown that Waddell's testimony would necessarily be unreliable on all issues concerning the business trips. Waddell has extensive experience in dealing with aircraft brokerage and appraisals, and such experience would qualify him to provide certain information concerning the depreciation and sales of the Aircraft. (Mot. Ex. A). Therefore, we deny Heller's request to bar Waddell from providing testimony relating to the usage of the Aircraft by GECC during the business trips.

### 3. Rejection of Offers

Heller moves to bar Waddell from testifying that Heller repeatedly turned down offers for the purchase of the Aircraft. Heller argues that Waddell admitted at his deposition that he only knew of one offer that Heller rejected. However, motions in limine are reserved for general matters that can be ruled upon in the abstract in advance of the trial. They are not a vehicle for the type of preemptive impeachment of a witness and micro-management of potential testimony as Heller attempts in the instant motion. Waddell was questioned by opposing counsel at his deposition, and such questioning exposed the fact that his statement that Heller "kept turning down

6

deals," was not necessarily accurate in light of his knowledge of only one rejection by Heller. (W Dep. 318). There is no reason to believe that Waddell will repeat the error at trial and if he does, he might discredit himself because Heller will be able to point to his deposition testimony on cross examination. Therefore, we deny Heller's motion in limine to bar Waddell from testifying that Heller repeatedly turned down offers for the purchase of the Aircraft.

### 4. Reasonableness of AVPRO's Efforts to Sell Aircraft

Heller requests that Waddell be precluded from testifying regarding the reasonableness of AVPRO's efforts to sell the Aircraft. Again, Heller's objection to certain statements that might be made by Waddell at trial are entirely based upon potential inconsistencies with Waddell's deposition testimony. If Waddell strays from his deposition testimony during the trial, Heller will be able to impeach him. Therefore, we deny the request to bar Waddell from testifying about the reasonableness of AVPRO's efforts to sell the Aircraft.

### 5. Maintenance Charges and Sale Transaction

Heller requests that Waddell be precluded from testifying about the reasonableness of the maintenance charges on the Aircraft and about the final sale

transaction when Heller sold the Aircraft. Heller points out that Waddell specifically stated at his deposition that he is not intending to offer any opinions on either subject. This begs the question of why Heller felt an obligation to bring the instant motion in light of the statement by Waddell. The list of motions in limine in every case would be long indeed if a court is required to consider whether to bar witnesses from testifying about every topic that the witnesses do not even intend to discuss. Therefore, we deny as moot Heller's motion to preclude Waddell from testifying about the reasonableness of the maintenance charges and the final sale of the Aircraft.

### B. Testimony Concerning Value of Aircraft

Heller moves to bar Waddell from testifying about the "Blue Book" value of the Aircraft on July 31, 2002, when the Aircraft was surrendered to Heller. Heller argues that Waddell's estimation is unreliable. Although Heller disagrees with Waddell's methods used to calculate the value, Heller has not shown that his testimony is unreliable or that it should be excluded.

Heller also contends that the value of the Aircraft when it was given to Heller is irrelevant to the determination of the amount of the Gordons' debt that was reduced by the surrender of the Aircraft. Heller argues that the true measure of the

reduction of debt is the amount of money that Heller ultimately received when it sold the Aircraft. We agree for the reasons explained below in regard to the Gordons' motion in limine dealing with this issue that the value of the Aircraft on July 31, 2002, is not the proper value to use to determine the amount of the reduction of the Gordons' debt under the Surrender Agreement. However, the value of the Aircraft on July 31, 2002, is relevant for other purposes, such as assessing any potential depreciation of the Aircraft. Therefore, we deny Heller's motion to bar Waddell from testifying concerning the value of the Aircraft on July 31, 2002.

II. Gordons' Motions in Limine

The Gordons move to bar evidence concerning the value of the Aircraft after July 31, 2002. The Gordons also move to bar Heller from presenting Scott Forsberg ("Forsberg") as an expert witness at trial. Finally, the Gordons move to bar Heller from referring to certain evidence concerning damages that was not produced during discovery and move in the alternative to compel the production of the evidence.

### A. Value of the Aircraft After July 31, 2002

The Gordons move to bar evidence concerning the value of the Aircraft after July 31, 2002. The Gordons argue that when the Aircraft was surrendered to Heller,

the Aircraft was considered to be a partial satisfaction of the debt owed by the Gordons in the amount of the value of the Aircraft at that time. However, the Gordons fail to point to any controlling precedent that would mandate such a conclusion. The Gordons also contend that the Surrender Agreement provided for such a result, but nowhere in the agreement is there any such provision. The evidence clearly shows that it was the understanding of the parties that Heller would sell the Aircraft and equipment to recover what proceeds Heller could get. There was clearly no understanding that Heller intended to keep the Aircraft for its own use. The Surrender Agreement provides that the Aircraft would be given to Heller "in partial satisfaction of the Indebtedness," which is referred to as the "Satisfied Portion." (SA Par. 4). The agreement also provides that "[a]ll parties agree that nothing in this Agreement shall be evidence of the appropriate amount of the Satisfied Portion." (SA Par. 4). Such a statement is consistent with Heller's contention that the value of the Aircraft could not be calculated at the time that the parties entered into the Surrender Agreement and that it was to be determined based on the future sale price of the Aircraft. In addition, the Surrender Agreement specifically refers to the anticipated sale of the Aircraft by Heller. The Surrender Agreement provides that Heller agrees to "sell the [Aircraft] in a commercially reasonable manner" and then immediately provides thereafter that, "except for and

limited to the *amount ultimately found to be the Satisfied Portion*," Heller's acceptance of the Aircraft was not a waiver of "any deficiencies *after the sale or disposition* of any Collateral." (SA Par. 4)(emphasis added). Thus, it is clear that the Surrender Agreement contemplates that the amount of the reduction of the debt of the Gordons' would be the sale price of the Aircraft when sold in a commercially reasonable manner. Therefore, we deny the Gordons' motion to bar evidence concerning the value of the Aircraft after July 31, 2002.

### B. Motion to Bar Expert Testimony of Scott Forsberg

The Gordons contend that Heller intends to offer expert testimony from Forsberg at trial regarding the Aircraft's value and related matters. The Gordons seek to bar Forsberg's testimony regarding the value of the Aircraft on or near July 31, 2002, because Forsberg bases his opinion on an appraisal he performed and because Heller has not produced documents that Forsberg relied upon in making the appraisal. The Gordons' motion essentially constitutes a motion to compel or, in the alternative, a motion for sanctions for Heller's alleged failure to produce such documents. Heller contends that the Gordons' motion is untimely because no motion to compel was filed earlier. We agree. The Gordons admit that Forsberg testified that he relied upon the documents in question during his initial deposition

11

on June 29, 2005. (Mot. 2). On March 28, 2006, we gave the parties until May 2, 2006, to complete any additional discovery as to damages. The discovery period has passed and no motion to compel was filed by the Gordons. The Gordons cannot now seek to reopen discovery for the production of the documents one year later and on the eve of trial. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994)(stating that a motion for a sanction based upon discovery violations is untimely if there is an "unreasonable delay" before bringing the motion). Therefore, we deny the Gordons' motion to bar the testimony of Forsberg concerning the value of the Aircraft on or near July 31, 2002, and we deny the motion in the alternative to compel.

### C. Motion to Bar Use of Certain Damages Evidence Not Produced

The Gordons contend that Heller failed to respond to certain discovery requests during the course of discovery and request that the court bar Heller from introducing such evidence at trial. However, the discovery period has ended in this action, and the Gordons failed to file a motion to compel during the discovery period. The Gordons' motion on the eve of trial is thus untimely. *Brandt*, 30 F.3d at 756. Therefore, we deny the Gordons' motion to bar certain evidence relating to damages that was not produced during discovery. The Gordons request in the alternative that the court compel Heller to produce such evidence, but such a motion

could and should have been presented during the course of discovery. Therefore, we deny the Gordons' motion to compel as well.

## CONCLUSION

Based on the foregoing analysis, we deny Heller's motion to bar Waddell from testifying as to certain matters and we deny Heller's motion to bar evidence concerning the value of the Aircraft on July 31, 2002. We also deny the Gordons' motion to bar evidence concerning the value of the Aircraft after July 31, 2002, deny the Gordons' motion to bar Forsberg from testifying concerning the appraisal of the Aircraft on or near July 31, 2002, and deny the motion in the alternative to compel. We also deny the Gordons' motion to bar certain evidence concerning damages that was not produced during discovery.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 12, 2006